UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR MRAZ,

      Plaintiff,

v.                                                        Case No. 2:18-cv-254-FtM-38NPM

I.C. SYSTEM, INC.,

      Defendant.

---

**REPORT AND RECOMMENDATION**[1]

Before the Court is Plaintiff's Motion for an Award of Costs and Attorney's Fees (Doc. 41). Having obtained a summary judgment order in his favor and then accepting an offer of judgment for more than the maximum amount of statutory damages, Plaintiff Victor Mraz requests an award of $48,207.50 for fees and $1,666.79 for costs. With entitlement uncontested, Defendant I.C. System, Inc. ("ICS"), argues in response (Doc. 49) that the award should be limited to $9,801 for fees and $1,365.81 for costs. For the reasons discussed below, this United States Magistrate Judge recommends an award of $32,928.50 for fees and $1,366.79 for costs.

**I.**    **Factual and Procedural Overview**

As the Court previously found in its summary judgment order, this Fair Debt Collection Practices Act ("FDCPA") case concerns a single letter sent to Mraz by ICS as a debt collector. (Doc. 33 at 1-2). The letter contained a misstatement; Mraz disputed the

---

[1] Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this document.

validity of the debt; the creditor confirmed no balance was due; and ICS ceased all efforts to collect. Mraz decided to sue, and ICS chose to aggressively litigate the matter. In fact, ICS went so far as to contend—despite factual admissions to the contrary—that it is not a debt collector. (Doc. 33 at 4).[2] But in the end, the Court summarily rejected ICS's only defense and found ICS liable on all counts. (Doc. 33).

Changing its tack, ICS now opts to focus its efforts on minimizing Mraz's fee and cost recovery. And even though ICS had run up the fee-and-cost meter, so to speak, by opting for an aggressive defense that Mraz overcame in all respects, and ICS then offered Mraz a judgment in excess of the maximum statutory damages award (which Mraz accepted),[3] ICS attempts to flip the script and argue that it was Mraz (and not ICS) who made much ado about nothing, and that the fee-and-cost award should therefore be slashed by nearly 80%. The Court, however, is not so easily distracted from the facts at hand, and in monetary terms only a fraction of ICS's opposition to Mraz's fee-and-cost request has any merit.

## II.   Assessing a Reasonable Fee Award

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt

---

[2] Notably, this Court has repeatedly held ICS liable for violations of the FDCPA. *See*, *e.g.*, *Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361 (M.D. Fla. 2010); *Oppenheim v. I.C. Sys., Inc.*, No. 8:09-CV-497-JDW-TGW, 2010 WL 11628820 (M.D. Fla. July 27, 2010); *see also Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1273-74 (11th Cir. 2011) (observing that ICS is a debt collector for purposes of the FDCPA).

[3] The Rule 68 Offer of Judgment provides for the entry of judgment against ICS in the amount of $1,001.00 and "an additional amount for reasonable attorneys' fees and taxable costs incurred by [Mraz], in amount to be determined by the Court if the parties are unable to come to an agreement." (Doc. 36-1, ¶ 2).

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA provides for a civil cause of action to enforce its provisions, with debt collectors who violate the act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs. *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(1)-(3)). The FDCPA's reasonable fee provision, like many other federal fee-shifting statutes, is governed by the Supreme Court's lodestar precedent. *Moton v. Nathan & Nathan, P.C.*, 297 F. App'x 930, 931 (11th Cir. 2008); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (reasoning that Supreme Court "case law construing what is a 'reasonable' fee applies uniformly" to federal, prevailing party, fee-shifting statutes).

The lodestar figure is the product of a two step, fact intensive and case specific inquiry, asking: (1) what would a lawyer in this district assess a paying client per hour to provide representation comparable to the legal skill, expertise and acumen supplied to the plaintiff in this particular case, and (2) practicing good billing judgment, how many hours would it have been appropriate for counsel in this matter to bill the plaintiff for the claim or claims that were successful? *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-553 (2010); *Dague*, 505 U.S. at 562-567 (1992). Because it is objective, predictable, and readily ascertainable, this lodestar inquiry has, as its name suggests, become the guiding light in federal statutory fee-shifting jurisprudence. *Perdue*, 559 U.S. at 551.

There is a strong presumption that the lodestar method yields a fee sufficient for federal private-right-of-action plaintiffs to obtain competent counsel while not producing windfalls for attorneys. *Id.* at 552. An enhancement simply because the case was taken

on contingency is not permitted, *Dague*, 505 U.S. at 566-567, and it would otherwise be exceedingly rare for any enhancement to be appropriate. *Perdue*, 559 U.S. at 552; *see also id.* 561 (Thomas, J., concurring) ("the lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award"). But to avoid economic waste of litigant and judicial resources, downward departures—sometimes substantial—may be appropriate when a plaintiff rejects a reasonable resolution in favor of further, and yet needless, litigation. *See Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-165 (11th Cir. 2008) (affirming 85% reduction of lodestar in FDCPA case because the defendant offered $3,500 early in the litigation and the jury awarded only $1). Finally, the fee applicant bears the burden of establishing entitlement, documenting appropriate hours, and substantiating reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### A.    Reasonable Hourly Rates

As the Eleventh Circuit comprehensively, yet succinctly, explained in *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (1988) (internal citations omitted):

> A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion

> evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

"[F]ee rates vary from lawyer to lawyer, case to case, and client to client," and so the parties should provide comparisons to the court of fee-paying relationships that "are relevant to the facts and circumstances of the case, the client, and the attorney before it." *Id.* at 1300. Further, "the parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.*

All too often, the parties' submissions stake out polar extremes, provide insufficient or no comparisons, and offer inadequate support. But the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). At bottom: "It is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills … exhibited by the attorney in the case at bar…." *Id.* at 1301.

Turning to the task at hand, Plaintiff requests hourly rates of $425.00 for attorneys David Fineman and Joseph LoTempio, and $150.00 for paralegal Kathy Michie. To support these requested rates, Plaintiff supplied declarations from his counsel and their paralegal, and declarations from two other practitioners. The declarations from his counsel (Docs. 45, 46) and paralegal (Doc. 44) provide biographical details, but they are

otherwise of no value for interpolating a market rate. They do not supply any comparisons to fees actually paid by similarly situated clients to equivalent attorneys in corresponding matters, nor any range of rates paid in this district to litigators across various skill levels. But most importantly, they are fatally flawed because they rest on the invalid premise that fee applicants can seek inflated rates to make up for the contingent-fee cases in which they do not recover. *See Dague*, 505 U.S. at 566-567.

The boilerplate affidavits from practitioners Marcus Viles (Doc. 42) and Brian Zinn (Doc. 43) are also unhelpful. They superficially claim to be based on outdated criteria from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974),[4] and they pointlessly opine that the inflated rates of the fee applicants are nevertheless reasonable. *See Norman*, 836 F.2d at 1299 ("Testimony that a given fee is reasonable is … unsatisfactory evidence of market rate."). Further, with no analysis of the similarity of either the client or the litigators in any corresponding cases, much less a broad sample of comparable cases in which hourly rates were actually billed to paying clients, these opinions are entitled to no weight. *Id.*[5]

In opposition, ICS argues for an hourly rate of $225 for attorneys Fineman and

---

[4] *See Perdue*, 559 U.S. at 550-552 (distinguishing the lodestar method as distinct from, and superior to, the "*Johnson* approach").

[5] Nor do the two purported surveys attached to Plaintiff's motion offer any corroboration. First, because it is based on a survey of all types of lawyers and not just litigators, the United States Attorney's Office Fees Matrix has no probative value. *See DL v. D.C.*, 924 F.3d 585, 592 (D.C. Cir. 2019) ("nothing in the record reveals what percentage of respondents in the USAO's custom cross-section of the ALM data were litigators"). And second, courts have repeatedly found the United States Consumer Law Attorney Fee Survey Report unpersuasive. *See Alston v. Summit Receivables*, No. 6:17-CV-1723-ORL-31DCI, 2018 WL 3448595, *10 (M.D. Fla. June 27, 2018), *report and recommendation adopted*, No. 6:17-CV-1723-ORL-31DCI, 2018 WL 3436789 (M.D. Fla. July 17, 2018).

LoTempio, and $95 for paralegal Michie. In support, ICS supplies a declaration from attorney Ernest Kohlmyer, III. (Doc. 49-3). Kohlmyer testifies he has litigated "in excess of 5,000 consumer law cases" since 1991, with the "overwhelming majority" involving FDCPA and other state and federal statutes often at issue in debt-collection cases. (Doc. 49-3, ¶ 9). Curiously, though there does not appear to be any partner/associate distinction between Fineman and LoTempio, or any meaningful difference in their relevant skill and expertise, Kohlmyer opines the hourly rate for Mraz's "partners" and "associates" should not exceed $275 and $225, respectively. (Doc. 49-3, p. 5). But while he claims to have served "on several occasions" as an expert concerning FDCPA-plaintiff fee applications in the Middle District of Florida (Doc. 49-3, pp. 2, 4), Kohlmyer's declaration suffers all of the same shortcomings as the Viles and Zinn declarations discussed above. Consequently, it is likewise entitled to no weight.

So, to answer the salient question—what would a lawyer in this district assess a paying client per hour to provide representation comparable to the skill, expertise and legal acumen supplied to the plaintiff in this particular case—the Court must draw upon "its own knowledge and experience concerning reasonable and proper fees [to] form an independent judgment … without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303. This is just as it was five years ago when the Court was faced with an FDCPA fee application from the same lawyers in *Hurst v. Seterus, Inc.*, No. 2:15–cv–4–FtM–29CM, 2015 WL 3915562 (M.D. Fla. June 25, 2015) (Steele, J.).

In *Hurst*, the plaintiff brought FDCPA and corresponding state-law claims against two debt collectors concerning several allegedly wrongful acts related to the servicing of a residential mortgage. *Hurst*, 2015 WL 3915562 at *1. Less than two months after filing

its answer, one of the debt collectors served a Rule 68 offer of judgment for $2,001 plus reasonable fees and costs, which the plaintiff accepted. *Hurst*, No. 2:15–cv–4–FtM–29CM, Doc. 20 (M.D. Fla. Mar. 16, 2015). Finding the requested hourly rates unsubstantiated, the Court relied on its own expertise, assessed the skill and experience that Fineman brought to the case, and determined that $300 was a reasonable hourly rate.[6] *Hurst*, 2015 WL 3915562 at *1. And overall, the Court awarded $2,335 for fees and $465 for costs.

Here, the market rates for the services provided are higher not only due to the passage of time, but because the services of plaintiff counsel reflected a higher level of skill, experience and acumen. This case involved a greater degree of complexity and an aggressive and difficult defendant, with dueling Rule 11 motions and cross motions for summary judgment concerning unsettled issues of statutory interpretation. Meeting the challenge, plaintiff counsel secured an excellent result for their client. The maximum statutory damages award of $1,000 is reserved for the most egregious cases involving a sustained pattern of harassment,[7] and it would have been well within the province of a

---

[6] While an across-the-board reduction of 30% was applied to LoTempio's fee request because neither the rate nor the hours were sufficiently documented, it appears the Court implicitly accepted $250 as a reasonable hourly rate for LoTempio's services in *Hurst*. *Hurst*, 2015 WL 3915562 at *1.

[7] *See*, *e.g.*, *Johnson v. Critical Resolution Mediation LLC*, No. 3:16-cv-632-J-34MCR, 2017 WL 2590007, *6 (M.D. Fla. Apr. 24, 2017) (finding FDCPA plaintiff entitled to $1,000 in statutory damages because defendant "made multiple, persistent phone calls" to collect a debt, and "asked Plaintiff to reveal sensitive confidential information without disclosing its identity or the nature of the calls despite being requested to do so, told Plaintiff that she had committed a crime by not repaying her alleged debt, and threatened to show up (or have law enforcement show up) at Plaintiff's residential address"), report and recommendation adopted, 2017 WL 2578705 (M.D. Fla. June 14, 2017).

jury to award $1 had this matter gone to trial,[8] and yet LoTempio and Fineman obtained a judgment for $1,001 based on the singular act of ICS sending one, erroneous, debt-collection letter.

Accordingly, drawing from its familiarity with these and other consumer debt-collection lawyers that have come before it, and its expertise concerning the market value of the services they provide, the Court finds that $330 is a reasonable rate for the services provided to the plaintiff in this case.[9] And based on the same expertise and reasoning, it finds that $110 is a reasonable rate for the services provided by paralegal Michie in this matter.[10]

## B.    Reasonable Number of Hours

"Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client." *In re Home Depot Inc.*, 931 F.3d 1065, 1087 (11th Cir. 2019). In other words, fee applicants must exercise "billing judgment" and exclude excessive, unnecessary, or redundant hours "that would be unreasonable to bill to a client." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Among the hours requested in this matter, there are two categories

---

[8]  *See*, *e.g.*, *Thornton*, 312 F. App'x at 163-165 (jury awarded FDCPA plaintiff only $1).

[9]  *Cf. Hering v. Halsted Fin. Servs., LLC*, No. 8:17-CV-1439-T-33MAP, 2017 WL 4355626, *6 (M.D. Fla. Oct. 2, 2017) (finding a range from $250 to $350 across varying levels of skill and experience for FDCPA counsel reasonable).

[10]  *Cf. Alston*, 2018 WL 3448595, at *10 (finding courts award between $95.00 and $100.00 per hour for paralegal time); *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, *11 (M.D. Fla. June 8, 2018), *report and recommendation adopted*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018) (finding the prevailing market rate for a paralegal with 25 years of experience to be $125.00).

of time that would not be reasonable to bill a client.

First are the hours related to a belated attempt to file an amended motion for summary judgment that was stricken from the record and not considered by the Court. Between June 21, 2019 and July 24, 2019, LoTempio devoted 10.9 hours and Michie devoted .3 hours to this work.

Second are the hours devoted to clerical or administrative tasks.[11] Here, 0.7 hours of LoTempio's time on April 19, May 8, and June 19, 2019 were administrative or clerical in nature. Furthermore, all of paralegal Michie's time was non-compensable except for the 1.45 hours of entries on April 20, September 13, and December 4 through 6 in 2018, and the 1.2 hours of entries on January 8, January 10, and April 15 through 30 in 2019.[12]

The Court otherwise finds the hours adequately described and reasonable in amount and rejects ICS's other objections. Accordingly, the Court arrives at a lodestar amount of $32,928.50 as detailed in the following table:

| Name | Hourly Rate | Number of Hours | Total |
|------|------------|-----------------|-------|
| Joseph LoTempio | $330.00 | 95.4 | $31,482.00 |
| David Fineman | $330.00 | 3.5 | $1,155.00 |
| Kathy Michie | $110.00 | 2.65 | $291.50 |

---

[11] Moreover, a court may "only award fees for the work of a paralegal when the work is of a legal nature, traditionally performed by attorneys." *Fed. Trade Comm'n v. Life Mgmt. Servs. of Orange Cty., LLC*, No. 6:16-CV-982-ORL-41TBS, 2017 WL 2869535, *3 (M.D. Fla. June 12, 2017), *report and recommendation adopted*, No. 6:16-CV-982-ORL-41TBS, 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (collecting cases).

[12] The 0.3 hours Michie devoted to the amended summary judgment motion were also administrative or clerical in nature and excluded for that reason as well.

### III.   Taxable Costs

Of the $1,666.79 in litigation expenses Plaintiff seeks to recover as taxable costs, ICS challenges only the mediation cost of $300.00. As the Supreme Court recently held in *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019), "federal courts are limited to awarding the costs specified in [28 U.S.C.] §§ 1821 and 1920." Mediation expenses are not among the statutorily specified costs, and so ICS's objection is sustained. Plaintiff's taxable costs are limited to $1,366.79.

Accordingly, it is **Respectfully Recommended**:

1. Plaintiffs' Motion for an Award of Costs and Attorneys' Fees (Doc. 41) be **GRANTED in part and DENIED in part**.

2. The Clerk be directed to amend the judgment in favor of Plaintiff and against defendant I.C. System, Inc. awarding attorney and paralegal fees in the amount of $32,928.50, and costs in the amount of $1,366.79.

Reported in Chambers in Fort Myers, Florida on May 18, 2020.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**